UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE O'BRIEN,

                Plaintiff,        Case No. 19-11002
                                          Honorable Marianne O. Battani
                                          Magistrate Judge David R. Grand

v.

ANDREW SAUL,
Commissioner of the
Social Security Administration,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14,16]**

Plaintiff Jacqueline O'Brien ("O'Brien") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties filed summary judgment motions (ECF No. 14; ECF No. 16) and O'Brien filed a reply (ECF No. 17). The case was referred to this court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court recommends that the Commissioner's Motion for Summary Judgment (ECF No. 16) be **GRANTED**, O'Brien's Motion for Summary Judgment (ECF No.14) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

**II.     REPORT**

    **A.     Procedural History**

On June 12, 2017, O'Brien filed an application for DIB benefits, alleging disability onset on May 1, 2016. (Tr 164). At that time, she was 52 years old, five feet tall and weighed 129 pounds. (Tr. 164, 186). She completed high school through the tenth grade in special education classes. (Tr. 187). On her application, O'Brien listed pulmonary artery disease, Chronic Obstructive Pulmonary Disease ("COPD"), and anxiety as her disabling medical conditions. (Tr. 186).

O'Brien's application was denied on August 28, 2017. (Tr. 89-96 ). Thereafter, O'Brien filed a timely request for an administrative hearing, which was held on June 18, 2018, before ALJ Roy E. LaRoche, Jr. (Tr. 40). O'Brien, who was represented by attorney Clifford Walkon, testified at the hearing as did vocational expert ("VE") Zachary Matthews. (*Id.*). On September 12, 2018, the ALJ issued a written decision holding that O'Brien was not disabled. (Tr. 21-39). On February 14, 2019, the Appeals Council denied review. (Tr.1-3). O'Brien filed for judicial review of the final decision on April 5, 2019. (ECF No. 1.)

    **B.     Framework for Disability Determinations**

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

2

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D.     The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that O'Brien was not disabled under the Act. At Step One, the ALJ found that O'Brien had not engaged in substantial gainful activity since April 24, 2017. (Tr. 26). At Step Two, the ALJ found that O'Brien had the following severe impairments: "coronary artery disease, status/post myocardial infarction with stenting, generalized anxiety disorder, and depression." (Tr. 26). At Step Three, the ALJ found that O'Brien's impairments did not meet or medically equal Listing 3.00 for respiratory disorders, Listing 4.00 for cardiovascular disorders or Listings 12.04 and 12.06 for mental disorders. (Tr. 27-29).

3

The ALJ then assessed O'Brien's residual functional capacity ("RFC"), concluding that she was capable of performing light work as defined by 20 C.F.R. § 416.967(b) with the following list of exceptions: "occasional postural functioning; is limited to unskilled work, as defined in SSR 85-15 (i.e. retains the ability on a sustained basis to understand, carry out, and remember simple instructions; can respond appropriately to supervision, coworkers, and usual work situations; and can deal with changes in a routine work setting); and no more than occasional contact with coworkers or the public."  (Tr. 29).

At Step Four, the ALJ found that the demands of O'Brien's past relevant work as a day worker for homebound people "exceed [her] residual functional capacity."  (Tr. 34).  At Step Five, the ALJ concluded, based in part on Vocational Expert Zachary Matthew's testimony, that O'Brien was capable of performing a significant number of jobs that exist in the national economy, including order filler (165,000 jobs nationally), record clerk (42,000 jobs), and office clerk (158,000 jobs).  (Tr. 34).  As a result, the ALJ concluded that O'Brien was not disabled under the Act.  (Tr. 35).

### E.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations

omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.   Analysis**

O'Brien presents three arguments in her motion for summary judgment. First, O'Brien argues that the ALJ erred in finding that her alleged osteoarthritis and rheumatoid arthritis were

not severe impairments.[1] (ECF No. 14, PageID.812.) Second, she argues that the ALJ failed to consider all her impairments when determining her RFC. (*See id*. at PageID.815.) Third, she argued that the VE testimony was not supported by substantial evidence. (*See id*. at PageID.818.) These arguments lack merit.

### 1. *The ALJ Did Not Err at Step Two*

As the government points out, in order for an impairment to be considered at Step Two, it must be both a medically determinable impairment ***and*** severe. *See Watters v. Comm'r Soc. Sec. Admin*, 530 F.App'x 419, 421 (6th Cir. 2013); 20 C.F.R. §§ 416.909, 416.920(c)(emphasis added). First, the claimant "bears the burden of demonstrating that [she] suffers from a medically determinable [] impairment – a burden that requires 'medical signs and laboratory findings.'" *See Watters, supra* (quoting Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1). Second, she bears the burden of showing that the medically determinable impairment is severe. 20 C.F.R. §§ 416.909, 416.920(c). To be considered severe, the impairment must "significantly limit a claimant's physical or mental ability to do basic work activities for at least 12 months." *See id*. O'Brien failed to carry this burden at Step Two.

#### a. *Osteoarthritis*

The primary document that O'Brien cites to support her argument that she suffers from osteoarthritis – and that it is a medically determinable, severe impairment – is part of a treatment record from the office of her primary care physician. (Tr. 300).

On June 16, 2016, Dr. Wassim Chehouri, DO, who worked with O'Brien's primary care physician – Dr. Henry Ruettinger, DO, listed "[e]rosive (osteo) arthritis," in the assessment section

---

[1] O'Brien did not list osteoarthritis or rheumatoid arthritis in her application as medical conditions. (Tr. 186).

6

of his report. (*Id.*). Dr. Chehouri was seeing O'Brien for a follow-up visit for her COPD at the time. (Tr. 298). Indeed, most of the visit focused on O'Brien's COPD. (Tr. 298-301). Dr. Chehouri's notes indicate:

> I counseled the patient on tobacco cessation for more than 15 minutes. I previously prescribed her nicotine patches that she is using inconsistently. I told her not using [her] patches if she is continuing to smoke. [sic] She is trying to cut down at this time. We discussed this at length. She has been using her COPD inhalers incorrectly. I counseled her on how and when to use her inhalers at this time. We'll continue Qvar and albuterol as prescribed. If she continues to have coughing at night, we'll add a long-acting beta agonist.

(Tr. 300).

Although "[e]rosive (osteo) arthritis" is listed again in her medical records on May 2, 2017 (Tr. 336-37), and July 20, 2017 (Tr. 585-86), the bulk of O'Brien's medical records from Dr. Ruettinger address her COPD, heart disease and low back pain. (Tr. 282-402; 583-603). With regard to O'Brien's low back pain, when O'Brien received imaging of her back – both thoracic and lumbar – the radiographs were unremarkable:

> There are five lumbar type vertebral bodies. There is no acute fracture or subluxation. Vertebral body heights are maintained. Lumbar alignment is normal. There are no significant degenerative changes. Neural foramens are patent.
> * * *
> There are 12 thoracic type rib bearing vertebra. No acute fracture or subluxation is identified. Thoracic alignment is normal. Vertebral body heights maintained.

(Tr. 752-53).

Thus, although osteoarthritis is referenced in O'Brien's records, the x-rays do not support a diagnosis of osteoarthritis. Moreover, even if she had this condition, O'Brien failed to present evidence that it significantly limited her physical abilities for at least twelve months. Indeed, Dr. Chehori's medical examination of O'Brien did not reveal any tenderness or swelling. (Tr. 300). And, Dr. Ruettinger completed his medical source statement on October 19, 2017, and did not list

7

osteoarthritis as a limiting condition. (Tr. 462-62.) Therefore, O'Brien fails to present evidence of osteoarthritis limiting her abilities for at least twelve months. (*See id.*) As such, the ALJ did not err in finding that O'Brien's alleged osteoarthritis was not a severe, medically determinable impairment under 20 C.F.R. §§ 416.909; 416.920(c)(claimant must show an impairment is medically determinable using medical signs and laboratory findings, and severe by evidence that it significantly limits her ability to do basic work activities for 12 months).

### b. *Rheumatoid Arthritis*

In his Step Two analysis, the ALJ specifically referenced that O'Brien was seen at Botsford Rheumatology on February 28, 2018. (Tr. 27). However, the ALJ noted that testing showed "negative rheumatoid factor." (*Id.*). O'Brien cites these same records in support of her argument that her alleged rheumatoid arthritis was a medically determinable, severe impairment. (Tr. 665-765). Her argument fails.

First, consistent with the ALJ's explanation, rheumatoid arthritis was never listed as a diagnosis in any of these documents. (*See id.*). Rather, as the ALJ noted, these documents reveal that O'Brien tested *positive for ANA and negative for the rheumatoid factor*. (Tr. 667)(emphasis added). This means that antinuclear antibodies were found in O'Brien's blood. https://www.webmd.com/a-to-z-guides/what-is-an-antinuclear-antibody-test#2. This could be an indicator of rheumatoid arthritis, or it could mean "nothing at all," but again, here, O'Brien tested negative for the rheumatoid factor. *See id*. Second, the ALJ noted that although her ANA was elevated, O'Brien had normal range of motion in her cervical spine, normal range of motion in her hips, unremarkable elbows, hands, and wrists, and her joints were not swollen, and reasonably weighed that against findings that O'Brien had a decreased range of motion in her lumbosacral spine and some "tenderness" in her right knee and left foot. (Tr. 27, 670). The ALJ also noted

8

that an x-ray from a few weeks later showed her lumbosacral spine was unremarkable. (Tr. 27, 752). Thus, the ALJ's conclusion that O'Brien being ANA positive did not "caus[e] more than a minimal effect on her ability to function in a work environment" is supported by substantial evidence. (Tr. 27). As such, the ALJ did not err in finding O'Brien's alleged rheumatoid arthritis was not a severe, medically determinable impairment.

    *2.    Substantial Evidence Supports the ALJ's RFC Finding*

Next, O'Brien argues that the ALJ failed to consider all her impairments when determining her RFC. (*See id*. at PageID.815.) Specifically, O'Brien claims the ALJ violated SSR 96-8p by failing to consider her complaints of joint pain. (*See id*.) In addition, she claims that the ALJ ignored the opinions of both Dr. Ruettinger and Dr. Mary Ann Skoures. (*See id*.)

A claimant's RFC is defined as "the maximum degree to which [she] retains the capacity for sustained performance of the physical-mental requirements of jobs." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). Social Security Ruling 96-8p states that a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." *See* 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996).

O'Brien filed her claim for benefits on June 12, 2017.[2] (Tr. 164-67). Thus, as the Commissioner points out, the Court must apply the new social security regulations for evaluating medical opinion evidence which apply to claims filed after March 27, 2017. *See* 20 C.F.R. § 416.920(c). These regulations abrogate the prior "treating physician rule" stating:

> *We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)* or prior administrative medical finding(s), including those from your medical sources. When a

---

[2] For reasons that are unclear, both the ALJ and the Commissioner identify April 24, 2017 as her application date, but using that date does not affect the Court's analysis. (Tr. 24; ECF No. 16, PageID.827.)

9

>  medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

20 C.F.R. § 416.920c(a)(emphasis added).

The five factors now used to evaluate medical opinion evidence are: supportability, consistency, relationship with the claimant, length of treatment relationship, specialization, and other factors such as medical source familiarity with the other evidence or the disability program. 20 C.F.R. § 416.920c(c). Of these factors, the two most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b).

O'Brien argues that the ALJ "*ignored*" (ECF No. 14, PageID.815 (emphasis added)) medical source statements from Drs. Ruettinger and Skoures. (Tr. 460-62; 673-74). This argument lacks merit.

### a. Dr. Ruettinger

On October 19, 2017, Dr. Ruettinger issued a medical source statement in which he stated that O'Brien can only stand or walk 1-2 hours a day. (Tr. 460-62). Likewise, Dr. Ruettinger stated that she can only sit 1-2 hours a day. (*See id.*). He also stated that she would need frequent breaks, and would miss more than 4 days per month as a result of her impairments or treatment. (*See id.*).

The ALJ did not ignore Dr. Ruettinger's opinions. To the contrary, he specifically addressed them, assessing the extreme restrictions Dr. Ruettinger imposed against the new regulations for medical source statements. (Tr. 32). First, the ALJ acknowledged the new regulations contained in 20 C.F.R. § 416.920c(a)-(c), by stating: "As for medical opinions and prior medical findings, we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including

10

those from your medical sources." (*Id.*). He then concluded that Dr. Ruettinger's opinions "are not persuasive, as they are not supported by the evidence in the doctor's progress notes." (*See id.*). He went on to point out that there is very little as far as objective medical evidence to support O'Brien's complaints of joint pain. (*See id.*). He also noted that Dr. Ruettinger's "opinions are not consistent with the noted improvement in the claimant's physical condition post stent placement." (*See id.*). The ALJ's findings accurately characterize Dr. Ruettinger's medical records. O'Brien's medical records leading up to her November 22, 2017 stent placement reflect no objective findings that would support the extreme limitations imposed by Dr. Ruettinger in October of that year. On May 2, 2017, Dr. Ruettinger noted that O'Brien was seeing him simply to obtain a refill for her prescription-strength Tylenol which she was taking "as needed"; O'Brien did not present with any specific complaint at all, let alone any that were consistent with the type of limitations Dr. Ruettinger imposed. (Tr. 336). Similarly, in late July and late August 2017, O'Brien had no pain or weakness in her extremities. (Tr. 583-603, 619, 621). Throughout October 2017, she was found to be "active", feeling reasonably well with no fatigue or weakness, and with no pain or weakness in her extremities. (Tr. 623, 629). In late November, 2017, a few weeks after the stent placement, O'Brien was found to be "feeling overall good" with no pain or weakness in her extremities. (Tr. 631-34). Thus, the ALJ's findings about the supportability and consistency of the doctor's opinions, 20 C.F.R. § 416.920(b), were not erroneous. It also bears mention here that when O'Brien applied for benefits, she listed pulmonary artery disease, Chronic Obstructive Pulmonary Disease ("COPD"), and anxiety as her disabling medical conditions. (Tr. 186). The ALJ did not err in highlighting the fact that O'Brien's physical condition improved post-stent.

O'Brien also argues that the ALJ's analysis is faulty because it rested in part on his statement that "Dr. Ruettinger is [O'Brien's] primary care physician and not a specialist in

cardiology or mental health, which are the two most limiting areas of [her] condition." (ECF No. 14, PageID.816.) This argument, however, has it backwards; it is precisely because Dr. Ruettinger was O'Brien's primary care physician that the absence of progress notes supporting extreme limitations in her ability to perform basic functions like sitting, standing, and walking renders his opinions "not persuasive." And again, this argument of O'Brien's fails to address the ALJ's finding that Dr. Ruettinger's records contain no objective medical evidence of osteoarthritis, and that O'Brien's physical condition improved post-stent. (Tr. 32).

### b. Dr. Skoures

Dr. Skoures's medical source statement is similar to Dr. Ruettinger's. It states that O'Brien can only stand or walk 1-2 hours in an eight hour day due to joint pain and COPD. (Tr. 674-75). She also states O'Brien can only sit 3-4 hours a day, indicating that she "must alter positions." (*See id.*). She also states that O'Brien would miss about 3 days a month due to her impairment or for treatment. (*See id.*).

Again, the ALJ analyzed this statement using the new rules, stating: "Dr. Skoures's opinion is deemed not persuasive, as it is not supported by the evidence in the record." (Tr. 33). Substantial evidence supports the ALJ's analysis. First, when O'Brien saw Dr. Skoures on January 3, 2018, she did not present with any specific complaints that would invoke the type of extreme limitations Dr. Skoures imposed. (Tr. 714). Rather, O'Brien went in for a basic "well visit," and identified her conditions as coronary artery disease, hypertension, "lipids," anxiety, depression, and hypothyroidism. (*Id.*). As the Commissioner points out, although O'Brien reported back tenderness and had limited range of motion, her physical exams and x-rays were essentially normal and unremarkable. (Tr. 714-20, 752.) For example, Dr. Skoures found O'Brien was in no acute distress, had full range of motion in her neck, her heart had no murmurs and had a regular rate and

12

rhythm, she had no issues with her extremities. (Tr. 717). Her straight leg raising test was negative bilaterally. (*Id.*). Dr. Skoures instructed O'Brien to return in six months, which is inconsistent with the extreme limitations the doctor imposed. (Tr. 718).

The ALJ also notes that "the record only reflects that the claimant was seen by Dr. Skoures on one occasion, which was over three months prior to the date of [her] medical source statement." (Tr. 33). Although no longer relevant to a "treating physician" analysis, the fact that Dr. Skoures only saw O'Brien on one occasion was an appropriate factor the ALJ to consider in determining the persuasiveness of that doctor's opinion. *See* 20 C.F.R. § 416.920c(c)(3)(i) ("The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).").

Lastly, the ALJ states that Skoures's "medical source statement is inconsistent with the lack of recent treatment for her heart condition." (Tr. 33). O'Brien again argues that this analysis is faulty because Dr. Skoures is O'Brien's primary care physician and thus not responsible for treatment of her heart condition. (ECF No. 14, PageID.816.) This argument fails for the same reasons it fails with regard to Dr. Ruettinger's opinions. The bottom line is that the ALJ's analysis of Dr. Skoures' opinion was amply supported by the record.

In sum, contrary to O'Brien's assertion that the ALJ *ignored* her two primary care physicians' medical source statements (ECF No. 14, Page.ID816.), the ALJ assessed them and reasonably found them unpersuasive.

In her reply, O'Brien argues that Dr. Ashwini M. Shadakshari, MD noted decreased range of motion and tenderness in his examination on May 3, 2018. (Tr. 760-65). O'Brien claims these observations were objective evidence of rheumatoid arthritis. (ECF. No. 17, PageID.17.) However, in the same examination, Dr. Shadakshari noted that O'Brien had no swelling in her

13

elbows, wrists, or hands. (Tr. 764). In addition, although he stated that O'Brien "was seen for rheumatoid arthritis," his diagnosis was Erythema nodosum, sarcoidosis, ANA positive and Fibromyalgia. (Tr. 764-65). He recommended lifestyle modifications and prescribed gabapentin. (Tr. 765). He did not diagnose her with rheumatoid arthritis. (Tr. 764-65). At any rate, this one treatment record does not overcome the substantial evidence in the record that supports the ALJ's RFC.

*3. Substantial Evidence Supports the Vocational Expert's Testimony*

O'Brien states that the VE testimony is not supported by substantial evidence. (ECF No. 14, PageID.818.) Essentially, O'Brien argues that the testimony is unsupported because the ALJ's RFC was invalid. (*See id.*) Given that substantial evidence supports the ALJ's RFC, this argument lacks merit.

Moreover, the Court notes that the VE testified that O'Brien could not perform her past work as a day worker. (Tr. 68-69). The VE correctly identified this position as one at the medium exertion level, which is inconsistent with the ALJ's limitation to light work. (*See id.*). The VE then went on to state positions that a hypothetical person with O'Brien's RFC could perform, which included light work, with certain postural and mental limitations. As such, substantial evidence supports this testimony. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)(finding no error in reliance on expert testimony where the ALJ's hypothetical included the limitations from the RFC finding and there were no other apparent defects).

### III. CONCLUSION

For the reasons set forth above, the court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 16)** be **GRANTED**, O'Brien's Motion for Summary Judgment **(ECF No.14)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

| | |
|---|---|
| Dated: February 11, 2020<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 11, 2020.

s/Eddrey Butts<br>
EDDREY BUTTS<br>
Case Manager
